Francisco CALDERON and Jose Salinas, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Ed MADIGAN, in his official capacity as Secretary of Agriculture; Earl Tilley, in his official capacity as Administrator of the Farmers Home Administration; Michael Field, in his official capacity as State Director of the Farmers Home Administration for Idaho; and the Wilder Housing Authority, Defendants.

Civ. No. 92–0063–S–MJC.

United States District Court, D. Idaho.

March 11, 1993.

Andrew C. Thomas, Caldwell, ID, Howard Belodoff, Boise, ID, for plaintiffs.

Stuart M. Gerson, Felix V. Baxter, Joseph W. LoBue, U.S. Dept. of Justice, Washington, DC, Maurice O. Ellsworth, U.S. Atty., D. Marc Haws, Warren Derbidge, Asst. U.S. Attys., Boise, ID, for defendants Madigan and Tilley.

Kenneth D. Roberts, Caldwell, ID, for defendant Wilder Housing Authority.

## MEMORANDUM DECISION

CALLISTER, Senior District Judge.

The Court has before it defendants' motion to lift preliminary injunction as to the plaintiff Salinas. The motion has been fully briefed and is at issue.

This litigation began when two farmworker families were threatened with eviction from their homes in Chula Vista Acres, a subsidized low-income housing project for farm laborers run by the Wilder Housing Authority (Wilder). Wilder based its eviction notice on the ground that the farmworker families violated federal occupancy limitations because they had too many children. There were no allegations that the farmworker families were harboring friends or collateral relatives in the homes, and no evidence—during the initial stages of this litigation—that there were any rental payments in default or damage to the premises. The sole ground for the eviction was that the plaintiffs had too many children.

The plaintiffs sought a preliminary injunction to restrain the eviction until litigation could resolve the constitutionality of the occupancy limitations. The Court granted the motion for preliminary injunction restraining the eviction of the plaintiffs. The preliminary injunction was specifically conditioned upon the timely payment of rent by the plaintiffs, and upon compliance with all lease terms by the plaintiffs.

Wilder has now filed a motion to lift the preliminary injunction to allow a state court unlawful detainer action to proceed. Wilder filed the unlawful detainer action on the ground that the Salinases were not making timely rental payments. The state court judge presiding over the unlawful detainer action was notified of this Court's preliminary injunction, and required counsel to obtain an order from this Court lifting the preliminary injunction before the unlawful detainer action could proceed. Wilder now requests this Court to lift the preliminary injunction for the limited purpose of allowing the unlawful detainer action to proceed against the Salinases.

Plaintiff Salinas objects to the lifting of the preliminary injunction and asserts that he has paid his rent. Wilder concedes that plaintiff has paid his rent, but asserts that the plaintiffs have been chronically late in their payments. Indeed, the Wilder ledger sheets submitted to this Court show that since the preliminary injunction was issued in this case on February 27, 1992, the plaintiffs have always paid their rent, but have paid it after the "rent day." The issue before the Court is whether there is a grace period under federal regulations, or whether the plaintiffs are in default under the lease terms.

Under the terms of the lease, the Salinases pay their rent on a weekly basis. The rent day is each Friday, to cover the period of the following Saturday through Friday. The preliminary injunction in this case was issued on February 27, 1992. For each rental payment due during the period of time February 22, 1992, through June 13, 1992, the Salinases paid their rent ten days after the rent day. Since June 20, 1992, however, the Salinases have paid their rent within three days of the rent day.

The federal regulations governing Wilder provide that it may evict tenants "only for material noncompliance with the lease or occupancy agreement...." 7 C.F.R. p. 1930, subp. C, Ex. B, ¶ XIV.A.1. The regulations go on to define "material noncompliance" as

"repeated non-payment of rent ... beyond any grace period." *Id.* at ¶ XIV.2.b. Earlier in the regulations, a minimum ten-day "grace period" is established. *Id.* at ¶ IX.B.

The record establishes that since the preliminary injunction was issued, the Salinases have never been delinquent in their rent beyond the ten-day grace period. Thus, there has been no material noncompliance with the lease that could justify eviction. For these reasons, the Court shall deny defendants' motion to lift the preliminary injunction.